UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **WADE A WOODSON** | * | **CIVIL ACTION NO. 12-CV-01347** |
| | * | |
| **VERSUS** | * | **SECTION "C"** |
| | * | |
| **RENTROP TUGS, INC.** | * | **HON. HELEN BERRIGAN** |
| | * | **MAG. KAREN WELLS ROBY** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**ORDER AND REASONS**[1]

Before this court is defendant Rentrop Tugs, Inc.'s Motion for Partial Summary Judgment on plaintiff's claim for maintenance and cure and punitive damages. (Rec. Doc. 34). Rentrop's Motion presents two issues: (1) whether, as a matter of law, plaintiff is entitled to payment of maintenance and cure from the date of his alleged accident, as demanded; and (2) whether, as a matter of law, plaintiff is entitled to punitive damages on his claim for maintenance and cure.[2] (Rec. Doc. 34-3).

Having reviewed the record, memoranda fo counsel, and the applicable law, defendant's Motion for Partial Summary Judgment is GRANTED (Rec. Doc. 34) for the following reasons.

**Factual Background**

The following facts are uncontested:

At the time of the alleged injury, plaintiff Wade A. Woodson ("Woodson") was an

---

[1] Katharine Williams, a third year law student at Tulane University, helped prepare this order.

[2] Plaintiff Woodson claims that Rentrop arbitrarily and capriciously failed to provide him with the benefits of maintenance and cure and that therefore he is entitled to punitive damages. (Rec. Doc. 1 at 3-4).

1

employee of Rentrop Tugs, Inc. ("Rentrop"), working as a deckhand and member of the crew of the M/V MISS HILLARY. (Rec. Doc. 1, Rec. Doc. 34-3). On or about May 28, 2011, the MISS HILLARY collided with another vessel.[3] Plaintiff alleges that he sustained injuries when the collision caused him to be thrown into a window and caused equipment to fall on him. (Rec. Doc. 1 at ¶7). Woodson left the MISS HILLARY on May 30, 2011 and did not return to work for approximately three weeks. (Rec. Doc. 34-4 at 5). Woodson returned to work for Rentrop on or about June 23, 2011, after being contacted by Rentrop's port captain Frank Fiore. (Rec. Doc. 34-4 at 6).

Woodson continued to work for Rentrop through September 1, 2011. (Rec. Doc. 34-1 at ¶3, Rec. Doc. 35-2 at ¶3). On September 8, 2011, plaintiff requested medical treatment for the injuries he allegedly incurred as a result of the May 28 collision. (Rec. Doc. 34-1 at ¶4, Rec. Doc. 35-2 at ¶3). Rentrop arranged for Woodson to be seen by Dr. Robert Bourgeois on September 8, 2011. (Rec. Doc. 34-1 at ¶5, Rec. Doc. 35-2 at ¶5). After examining Woodson, Dr. Bourgeois diagnosed him with a healed right fifth rib fracture, a thoracic strain and right calf pain. (Rec. Doc. 34-5). Dr. Bourgeois recommended over-the-counter medication and indicated that plaintiff was able to return to regular duty. (Rec. Doc. 35 at 2). Woodson did not return to work for Rentrop after seeing Dr. Bourgeois. (Rec. Doc. 34-1 at ¶7, Rec. Doc. 35-2 at ¶7).

Plaintiff did not seek further medical treatment until he saw Dr. Jorge Isaza on October 19, 2011. (Rec. Doc. 34-1 at ¶8, Rec. Doc. 35-2 at ¶8, Rec. Doc 35-1 at 14). Dr. Isaza recommended that plaintiff undergo a lumbar MRI. (Rec. Doc. 34-1 at ¶10, Rec. Doc. 35-2 at ¶10). On November 16, 2011, after viewing the results of the MRI, Dr. Isaza recommended that

---

[3] The M/V MISS HILLARY collided with a vessel owned by Higman Barge Lines, Inc., the M/V PRESTON N SHUFORD. (Rec. Doc. 34-3).

Woodson undergo a lumbar epidural steroid injection. (Rec. Doc. 34-1 at ¶11, Rec. Doc. 35-2 at ¶11, Rec. Doc. 35-1 at 12). Woodson did not undergo the recommended injection until July 31, 2012. (Rec. Doc. 34-1 at ¶12, Rec. Doc. 35-2 at ¶12). Plaintiff did not request that Rentrop authorize the injection. (Rec. Doc. 34-1 at ¶13, Rec. Doc. 35-2 at ¶13).

Plaintiff filed his complaint on May 24, 2012. (Rec. Doc. 1). Rentrop learned of Woodson's ongoing treatment with Dr. Isaza on August 9, 2012, when Woodson's attorney submitted a formal demand for maintenance and cure. (Rec. Doc. 34-1 at ¶14, Rec. Doc. 35-2 at ¶14). Defendant Rentrop notified plaintiff's counsel that it was commencing an investigation as to plaintiff's entitlement to maintenance and cure on August 17, 2012. (Rec. Doc. 34-1 at ¶15, Rec. Doc. 35-2 at ¶15). On October 4, 2012 Rentrop notified plaintiff's counsel that it would commence paying maintenance and cure to plaintiff, under protest. (Rec. Doc. 34-1 at ¶17, Rec. Doc. 35-2 at ¶17). On October 22, 2012 Rentrop issued plaintiff's first maintenance check, under protest; the check was made retroactive to August 9, 2012, the date of Woodson's first demand to Rentrop. (Rec. Doc. 34-1 at ¶18, Rec. Doc. 35-2 at ¶18). Plaintiff continues to receive maintenance at the rate of $35.00 per day. (Rec. Doc. 34-1 at ¶19, Rec. Doc. 35-2 at ¶19). Rentrop has paid, under protest, medical expenses incurred by the plaintiff since the date of demand, August 9, 2012. (Rec. Doc. 34-1 at ¶20, Rec. Doc. 35-2 at ¶20). Rentrop has also paid, under protest, medical expenses incurred by plaintiff prior to the date of demand. (Rec. Doc. 34-1 at ¶21, Rec. Doc. 35-2 at ¶21). Plaintiff Woodson avers that he is only seeking maintenance for those days that passed after he stopped working and came under the care of Dr. Isaza. (Rec. Doc. 35 at 4).[4]

---

[4] Though Woodson's Complaint (Rec. Doc. 1) does not make this clear, Plaintiff's Response in Opposition to Rentrop's Motion for Partial Summary Judgment (Rec. Doc. 35) contains this language limiting the time period for which he is seeking recovery. Plaintiff stopped working on September 1, 2011. (Rec. Doc. 34-1 at ¶3, Rec. Doc. 35-

3

**Law and Analysis**

**I. Summary Judgment**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The parties seeking summary judgment bear the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir.2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir.2006); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir.2005).

In determining whether the evidentiary threshold has been met, the court "must view the evidence presented through the prism of substantive evidentiary burden" applicable to the particular cause of action before it. *Anderson vs. Liberty Lobby Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must

---

2 at ¶3). He did not come under Dr. Isaza's care until October 19, 2011. (Rec. Doc. 34-1 at ¶8, Rec. Doc. 35-2 at ¶8).

4

identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir.1988), cert. denied, 488 U.S. 926 (1988).

**II. Maintenance and Cure**

A seaman injured in the course of his employment is entitled to maintenance and cure. *Great Lakes Dredge and Dock Co. v. Martin*, No. 11-0405, 2012 WL 3158870, at *2 (E.D.La. August 3, 2012), *citing Chaney v. Omega Protein, Inc.*, No. 09-7235, 2010 WL 2977385, at *3 (E.D. La. July 21, 2010). Maintenance and cure requires the vessel owner to provide food, lodging and medical services to the injured seaman. *Atlantic Sounding Co., Inc. v. Parker*, No. 09-6831, 2010 WL 2836130, at *5 (E.D.La. July 14, 2010), *citing Lewis v. Lewis & Clark Marine, Inc.,* 532 U.S. 438, 441, 121 S.Ct. 993, 148 L.Ed.2d 931 (2001). A shipowner's obligation to provide cure to an injured seaman is an implied term of a maritime employment contract and does not depend on a determination of fault. *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 380 (5th Cir. 2012), *citing Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006). An owner of a vessel is almost automatically liable for the cost of medical treatment when an employee is injured. *Id., citing Brister v. A.W.I., Inc.*, 946 F.2d 350, 360 (5th Cir. 1991).

The right of maintenance and cure exists independent of any other source of recovery for the seaman. *Great Lakes Dredge* at *2, *citing Bertram v. Freeport McMoran, Inc.,* 35 F.3d 1008, 1013 (5th Cir. 1994). The right terminates when a doctor provides a qualified medical opinion stating that the seaman has reached maximum cure. *Id.¸citing Bertram*, 35 F.3d at 1012.

Maximum cure is achieved when it is probable that further treatment will result in no betterment of the seaman's condition. *Id., citing Springborn v. American Commercial Barge Lines, Inc.,* 767 F.2d 89, 95 (5th Cir. 1985). The Supreme Court has long recognized the importance of these remedies and has declared that the doctrines of maintenance and cure are to be liberally construed to benefit the seaman. *Id., citing Cooper v. Diamond M Co.,* 799 F.2d 176, 179 (5th Cir. 1986). Ambiguities or doubts regarding the entitlement to maintenance and cure are resolved in the seaman's favor. *Id.*

It is uncontested that Woodson continued to work for Rentrop from the date of the alleged accident (May 28, 2011) through September 1, 2011. (Rec. Doc. 35-2 at ¶3, Rec. Doc. 35-2 at ¶3). It is also uncontested that Woodson did not return to work for Rentrop after requesting and receiving medical treatment on September 8, 2011. (Rec. Doc. 34-1 at ¶7, Rec. Doc. 35-2 at ¶7). It is further uncontested that Woodson did not seek further medical treatment until he saw Dr. Jorge Isaza on October 19, 2011. (Rec. Doc. 34-1 at ¶8, Rec. Doc. 35-2 at ¶8, Rec. Doc 35-1 at 14).

A seaman cannot recover maintenance and cure for those days in which he was working of his own choice and receiving compensation. *Pyles v. American Trading & Production Corporation*, 372 F.2d 611, 619 (5th Cir. 1967), *see also Dowdle v. Offshore Express, Inc.*, 809 F.2d 259, 265 (5th Cir. 1987) ("Because the purpose of maintenance and cure is to provide a sick or injured seaman with sustenance and medical care during his convalescence, there is no reason to provide a seaman who is medically fit for regular duties with sustenance already provided by his employment, if such employment is by the seaman's choice and not a result of the . . . employer's willful failure to perform its maintenance and cure obligations."). Therefore,

Woodson is not entitled to maintenance and cure benefits from May 28, 2011 to September 1, 2011, as he voluntarily continued to work during this time period.

Woodson did not seek medical care for his injuries until September 8, 2011, and saw Dr. Bourgeois that day. (Rec. Doc. 34-1 at ¶5, Rec. Doc. 35-2 at ¶5). Dr. Bourgeois indicated that plaintiff was able to return to regular duty. (Rec. Doc. 35 at 2). Woodson did not return to work for Rentrop after seeing Dr. Bourgeois. (Rec. Doc. 34-1 at ¶7, Rec. Doc. 35-2 at ¶7). He did not seek further medical treatment until his initial appointment with Dr. Isaza, on October 19, 2011. (Rec. Doc. 34-1 at ¶8, Rec. Doc. 35-2 at ¶8, Rec. Doc 35-1 at 14). An injured seamen may not recover for days in which he did not work and during which he, of his own volition, was not under medical treatment even as an outpatient. *Pyles* at 619, *see also Lett v. Omega Protein, Inc.*, 2011 WL 4368654 (E.D. La. September 19, 2011). Therefore, Woodson is not entitled to maintenance and cure for days before he requested medical care, September *1-8, 2011, and between his appointment with Dr. Bourgeois on September 8, 2011 and October 19, 2011 when he sought medical care from Dr. Isaza. Rentrop's Motion for Partial Summary Judgment that Woodson is not entitled to payment of maintenance and cure from the date of his alleged accident, as demanded (Rec. Doc. 34-3 at 1, Rec. Doc. 1 at 3), is GRANTED. (Rec. Doc. 34). This Court makes no finding as to Woodson's entitlement to maintenance and cure from October 19, 2011 to the present.

**III. Punitive Damages**

When an employer receives a claim for maintenance and cure, it is entitled to investigate and require corroboration of the claim before making payments. *Naylor,* at *3, *citing MNM*

7

*Boats, Inc., v. Johnson*, 248 F.3d 1139 (5th Cir. 2001). If an employer, after conducting the investigation, unreasonably refuses to pay maintenance and cure, it is liable for maintenance and cure and also compensatory damages. *Id.* If the employer has shown callousness and indifference to the seaman's injuries, it is liable for punitive damages and attorney's fees. *Id., see also Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 424 (2009); *Morales v. Garijack, Inc.*, 829 F.2d 1355, 1358-59 (5th Cir. 1987), *abrogated on other grounds by Guevara v. Maritime Overseas Corp.,* 59 F.3d 1496 (5th Cir. 1995). To prove an employer's conduct was arbitrary and capricious, a seaman must do more than prove the employer's conduct was unreasonable. *Manderson,* 666F.3d at 383, *citing Morales* at 1358 (5th Cir. 1987). Employer conduct that might warrant an award of punitive damages includes: (1) negligence during the investigation of a claim; (2) termination of benefits because a seaman retained counsel or refused a settlement offer; or (3) failure to reinstate benefits following medical diagnosis of an ailment not previously determined. *Great Lakes Dredge*, 2012 WL 3158870, at *3, *citing Breese v. AWI, Inc.*, 823 F.2d 1008, 1013 (5th Cir. 1994). The willful and wanton conduct necessary to justify an award of punitive damages requires an element of bad faith. *Id., quoting Harper v. Zapata Offshore Co.*, 741 F.2d 87, 90 (5th Cir. 1985).

     Plaintiff Woodson has not sustained his burden in refuting Rentrop's claims that the evidence presented is insufficient to support a claim for Punitive Damages in this Motion for Partial Summary Judgment.[5] Rentrop was notified of Woodson's suit (which included a claim for

---

[5] If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir.1988), cert. denied, 488 U.S. 926 (1988).

maintenance and cure) when it was served with process in approximately mid-June of 2012. (Rec. Doc. 34-6 at 10). It is uncontested that Rentrop was not notified of plaintiff's on-going treatment with Dr. Isaza until plaintiff's counsel's demand for maintenance and cure on August 9, 2012. (Rec. Doc. 34-1 at ¶14, Rec. Doc. 35-2 at ¶14). This letter included a formal demand that Rentrop "immediately authorize and approve the cost associated with Woodson's medical treatment by his treating physician, Dr. Jorge Isaza . . .". (Rec. Doc. 34-6 at 1). Upon receiving this formal demand, Rentrop commenced an investigation and initiated payment of maintenance and cure (retroactively to the date of the formal demand, August 9, 2012), on October 4, 2012. Rentrop issued the first check to Woodson on October 22, 2012. (Rec. Doc. 34-1 at ¶¶14-18, Rec. Doc. 35-2 at ¶¶14-18).

     This Court notes that Woodson filed his original complaint on May 24, 2012, and alleged an arbitrary and capricious denial of his maintenance and cure claim as a basis for awarding punitive damages. (Rec. Doc. 1 at 3). However, plaintiff has nowhere asserted that Rentrop ever denied a claim for maintenance and cure.[6] Plaintiff did not request that Rentrop authorize the injection that Dr. Isaza recommended. (Rec. Doc. 34-1 at ¶13, Rec. Doc. 35-2 at ¶13). In his own deposition, plaintiff Woodson stated that he did not request that Rentrop pay for his treatment when he started seeing Dr. Isaza, stating that he "didn't fool with Rentrop after I left them." (Rec. Doc. 34-4 at 15). It is uncontested that Plaintiff's August 9, 2012 demand for maintenance and cure was investigated soon after Rentrop received it. (Rec. Doc. 34-1 at ¶15, Rec. Doc. 35-2 at ¶15). After completing its investigation, Rentrop commenced paying maintenance and cure (under protest) on October 4, 2012, fewer than two months after receiving his demand. (Rec.

---

[6]Plaintiff requested medical treatment on September 8, 2011, and received treatment provided by Rentrop under its cure obligation. (Rec. Doc. 34-1 at ¶¶ 4-5, Rec. Doc. 35-2 at ¶¶ 4-5).

Doc. 34-1 at ¶17, Rec. Doc. ¶35-2 at ¶17). A delay of approximately two months after a request for maintenance and cure has been found to be reasonable, and "militates against an arbitrary-and-capricious finding." *Manderson* 666 F.3d at 383.

The evidence in the record is insufficient with respect to an essential element of the plaintiff's claim at this time. If in the future Rentrop denies or terminates Woodson's maintenance and cure payments arbitrarily, and in bad faith, Woodson may request punitive damages at that time. Rentrop's Motion for Partial Summary Judgment that plaintiff is not entitled to punitive damages on his claim for maintenance and cure is GRANTED.

## CONCLUSION

Accordingly,

IT IS ORDERED that Rentrop's Motion for Partial Summary Judgment is GRANTED. (Rec. Doc. 34).

New Orleans, Louisiana, this 6th day of March, 2013.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**